UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY D. J., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br> Commissioner of Social Security, <br> Defendant. | Case No.  EDCV 20-1013-RAO <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.  INTRODUCTION

Plaintiff Tommy D. J.[1] ("Plaintiff") challenges the Commissioner's denial of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

///

///

///

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. SUMMARY OF PROCEEDINGS

On December 13, 2016, Plaintiff protectively applied for SSI alleging disability beginning March 1, 2007, due to lower back pain, depression, and anxiety. (Administrative Record ("AR") 16, 203, 226). His application was denied initially on May 10, 2017, and upon reconsideration on August 22, 2017. (AR 55-91.) On September 15, 2017, Plaintiff filed a written request for hearing, and a hearing was held on February 22, 2019. (AR 32, 103.) Plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert. (AR 32-54.) At the hearing, Plaintiff amended the alleged onset date to December 13, 2016, the date of his application for SSI. (AR 35.) On March 6, 2019, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] from December 13, 2016 through the decision date. (AR 27.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Plaintiff filed this action on May 12, 2020. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 13, 2016, the application date. (AR 18.) At **step two**, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; major depressive disorder without psychotic features; generalized anxiety disorder; substance use disorder; and posttraumatic stress disorder. (AR 18.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or

///

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

2

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 18.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform medium work . . . except [Plaintiff] can lift or carry up to 50 pounds occasionally and 25 pounds frequently; can push or pull up to 25 pounds; can sit for six hours of an eight hour workday; can stand or walk for up to six hours of an eight hour workday; and can perform simple, repetitive tasks.

(AR 20.)

At **step four**, based on Plaintiff's RFC and the vocational expert ("VE")'s testimony, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 25.) At **step five**, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 26.) Accordingly, the ALJ found that Plaintiff "has not been under a disability . . . since December 13, 2016, the date the application was filed." (AR 27.)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725

(9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Social Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in (1) determining the existence of other work at step five; and (2) determining his mental RFC. (Joint Submission ("JS") at 5-9, 19-31, 41-42.) The Commissioner disagrees. (JS at 9-19, 31-41.) For the reasons below, the Court affirms.

### A. The ALJ Did Not Err at Step Five

Plaintiff argues that the VE's testimony regarding the laundry worker, scrap sorter, and hand packager jobs "is inconsistent with and contradicted by statistical data from the Department of Labor," and thus cannot constitute substantial evidence to support the ALJ's decision. (JS at 5-9.) The Commissioner contends that Plaintiff forfeited his challenge to the VE's testimony, but even if he did not, the ALJ's step five finding is supported by substantial evidence. (JS at 9-19.)

///

### 1. Applicable Legal Standards

At step five of the sequential disability analysis, it is the Commissioner's burden to establish that, considering the claimant's residual functional capacity, the claimant can perform other work. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). To make this showing, the ALJ may rely on the testimony of a VE. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ may pose accurate and detailed hypothetical questions to the VE to establish: (1) what jobs, if any, the claimant can do; and (2) the availability of those jobs in the national economy. *Garrison*, 759 F.3d at 1011. The VE then translates the ALJ's scenarios into "realistic job market probabilities" by testifying about what kinds of jobs the claimant can still perform and whether there is a sufficient number of those jobs available in the economy. *Id.* (quoting *Tackett*, 180 F.3d at 1101). "[I]n the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017).

### 2. The ALJ's Decision

At step five, the VE testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as laundry worker (28,500 jobs), scrap sorter (47,300 jobs), and packager, hand (89,300 jobs). (AR 26, 51.) Plaintiff's counsel questioned the VE solely on whether any jobs were available if such an individual were to miss one day a week of work due to pain or psychological distractions. (AR 52.) The ALJ determined that the VE's testimony was consistent with the information contained in the DOT. (AR 27.) Adopting the VE's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, and Plaintiff was, therefore, not disabled. (AR 27.)

///

### 3. Discussion

Plaintiff challenges the VE's testimony regarding the job requirements, full-time status, and job numbers for each of the three jobs she identified, relying on publications from the Department of Labor's Bureau of Labor Statistics. First, Plaintiff argues that according to O*NET OnLine and the Occupational Requirements Survey ("ORS"), laundry workers stand/walk more than six hours in an eight-hour day. (JS at 5.) Plaintiff further argues that the Occupational Outlook Handbook ("OOH") does not support the proposition that laundry worker represents 20,500 jobs.[3] (JS at 5.) Second, Plaintiff argues that the VE did not use "a reliable methodology in estimating 47,300 jobs as a scrap sorter" because of the erosion of full-time employment, medium work, and standing/walking requirements per O*NET OnLine, ORS and OOH. (JS 6-7.) Third, Plaintiff argues that according to O*NET OnLine, ORS and OOH, "no reasonable conclusion exists for an individual limited to standing/walking six hours in an eight-hour day could perform any unskilled work as a hand packager . . . at any range of exertion." (JS at 7.)

"[T]he Social Security Administration relies primarily on the [DOT] for information about the requirements of work in the national economy," and a VE's testimony generally should be consistent with it. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting Soc. Sec. Ruling ("SSR") 00-4p, 2000 WL 1898704 at *2). When there is a conflict between the DOT and a VE's testimony, neither automatically prevails over the other. *Id*. The ALJ must determine whether a conflict exists and, if so, determine whether the expert's explanation for the conflict is

---

[3] Plaintiff first raised his arguments based on O*NET OnLine, the ORS, and the OOH to the Appeals Council in a letter brief dated May 28, 2019. (AR 290-94.) Plaintiff also relies on Occu Collect, portions of which he submitted to the Appeals Council with his request for review. (JS at 17; AR 514-625.) Occu Collect is a for-profit company and "historical archive," for which Plaintiff's attorney is the president and has "a 51% financial interest." (JS at 17 n.4; JS at 22.) The Court considers Occu Collect, O*NET Online, the ORS, and the OOH as non-DOT sources of alternative job information.

reasonable and whether there is a basis for relying on the expert rather than the DOT. *Id*.

As an initial matter, the Commissioner argues that Plaintiff forfeited his challenges based on alternative job information by failing to raise his arguments before the ALJ at the hearing. (JS 10-14.)

"[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). The Ninth Circuit in *Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2017), held that challenges to a VE's job numbers based on an alleged conflict with alternative sources of job information, such as the OOH, must be raised "in a general sense before the ALJ" to preserve a claimant's challenge. *See also Frugoli v. Berryhill*, 733 F. App'x 907, 907-08 (Mem) (9th Cir. 2018) (finding plaintiff forfeited his argument that a VE's testimony conflicted with the OOH because he did not raise the argument before the ALJ even though he was represented); *Gonzalez v. Berryhill*, 2018 WL 456130, at *2 (C.D. Cal. Jan. 17, 2018) (concluding that claims based on non-DOT materials that are not raised during the administrative proceeding are waived as to the VE's testimony) (citing *Shaibi*, 870 F.3d at 881). Plaintiff's counsel did not cross-examine the VE on the VE's source of information, her methodology, whether the jobs identified were full-time, or what the job duties entailed. (AR 52.) *See Biestek*, 139 S. Ct. at 1156 ("[Claimant] may probe the strength of testimony by asking [the vocational] expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions.") (citation omitted). Plaintiff does not refute that his counsel did not cross-examine the VE during the administrative hearing regarding her sources or methodology, or any of the alternative sources of job information he presents here.

Instead, Plaintiff argues that he submitted the alternative sources to the Appeals Council, so the issue was before the agency. (JS at 21) (citing *Brewes v.*

*Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163-64 (9th Cir. 2012)). Submitting new evidence to the Appeals Council, however, does not cure the forfeiture. *Shapiro v. Saul*, 833 F. App'x 695, 696 (Mem) (9th Cir. 2021) ("Under *Shaibi*, the submission of new evidence to the Appeals Council does not resolve the forfeiture issue, because the issue was not first raised before the ALJ."); *see also Ford v. Saul*, 950 F.3d 1141, 1159 n.14 (9th Cir. 2020) (challenging a VE's testimony may occur by cross-examining the VE at the hearing on apparent conflicts, making a request to the ALJ to "submit supplemental briefing or interrogatories contrasting the [VE]'s specific job estimates with estimates of the claimant's own," or, raising new evidence before the Appeals Council *if the ALJ declines the request for supplemental briefing*) (quoting *Shaibi*, 883 F.3d at 1110); *McCloud v. Berryhill*, 2018 WL 987222, at *4-5 (C.D. Cal. Feb. 20, 2018) (finding plaintiff waived challenge on appeal based on the OOH by failing to raise it before ALJ, even though it was raised before the Appeals Council). Plaintiff did not go through the requisite steps here.

Plaintiff also relies on *Lamear v. Berryhill*, 865 F.3d 1201, 1206 n.5 (9th Cir. 2017), to argue that a claimant does not forfeit any issue regarding the DOT even if the claimant never complained about inconsistency before the agency. (JS 20.) In *Lamear*, however, plaintiff's challenge was based on an apparent unresolved conflict with the DOT, not apparent unresolved conflicts with non-DOT sources such as those at issue here and addressed in *Shaibi*. As discussed below, an ALJ has an affirmative obligation to resolve apparent conflicts between VE testimony and the DOT, but has no similar obligation to resolve apparent conflicts between VE testimony and non-DOT sources. *See Shaibi*, 883 F.3d at 1109-10. The Court, therefore, finds that *Shaibi* is more applicable here than *Lamear*. *See Jaquez v. Berryhill*, 2019 WL 2868926, at *8-9 (S.D. Cal. July 2, 2019) (following *Shaibi* over *Lamear* and finding waiver of challenges based on non-DOT sources where plaintiff failed to raise those challenges before the ALJ, even though they had been raised to the Appeals Council).

///

Finally, Plaintiff argues that *Shapiro* is not precedent. (JS at 20.) The Court, however, finds it persuasive and consistent with *Shaibi*'s directive to raise issues based on alternative sources of job information "in a general sense before the ALJ" to preserve them on appeal. Plaintiff's challenges based on alternative sources of job information are forfeited.

Even were the Court to assume that Plaintiff's arguments were not forfeited, the arguments would be meritless because the ALJ was entitled to rely on the VE's testimony. Here, the ALJ found that the VE's testimony was consistent with the DOT, a finding that Plaintiff does not challenge. Plaintiff's argument focuses instead on alleged inconsistencies between the VE's testimony and non-DOT sources. Yet, the ALJ is not required to reconcile conflicts between the VE's testimony and non-DOT sources, such as O*NET OnLine, the ORS or the OOH. *See Shaibi*, 883 F.3d at 1109-10 (explaining that pursuant to SSR 00-4p, an ALJ must resolve conflicts between the VE's testimony and the DOT and an associated document [the SCO], and finding no duty to inquire into an alleged conflict between the VE's testimony and the OOH); *see also Maxwell v. Saul*, — F. App'x— , 2020 WL 7364552, at *2 (9th Cir. Dec. 15, 2020) (rejecting plaintiff's argument that ALJ failed to resolve conflict between VE's testimony and non-DOT vocational resources because an ALJ "does not have an affirmative obligation to resolve such conflicts") (citing *Shaibi*, 883 F.3d at 1109-10); *Rosalie M.M. v. Saul*, 2020 WL 5503240, at *2 (C.D. Cal. Sept. 11, 2020) (rejecting claim that ALJ was required to address inconsistency between VE testimony and the ORS and O*NET OnLine); *Beamesderfer v. Berryhill*, 2018 WL 2315956, at *7 (C.D. Cal. May 18, 2018) (rejecting claim that ALJ was required to address inconsistency between VE testimony and O*NET); *Vizcarra v. Berryhill*, 2018 WL 1684315, at *3 (C.D. Cal. Apr. 5, 2018) (finding ALJ satisfied his obligations under SSR 00-4p where no apparent DOT conflict arose even though ALJ did not resolve conflicts with other sources of job information such as the OOH or the O*NET), *aff'd* 833 F. App'x 461 (9th Cir. 2021); *Gonzalez v. Berryhill*, 2018

WL 456130, at *3 (C.D. Cal. Jan. 17, 2018) (rejecting claim that ALJ was required to address inconsistency between VE testimony and the OOH, even though the OOH is listed as an example of a source of reliable job information in the social security regulations), *aff'd* 833 F. App'x 464 (9th Cir. 2021). Plaintiff does not cite any binding Ninth Circuit decision that finds that a VE must rely on O*NET Online, the ORS or the OOH, or that any other source of job information controls when it conflicts with the VE's testimony, and the Court has found none. The Court declines to extend the ALJ's duty to resolve apparent conflicts under SSR 00-4p to apparent conflicts between a VE's testimony and O*NET OnLine, the ORS or the OOH.[4]

To the extent the Commissioner argues that Plaintiff's lay interpretation of the vocational evidence does not trump the expertise of the VE, the Court agrees. *See, e.g.*, *Kevin E. v. Saul*, 2021 WL 134584, at *6 (C.D. Cal. Jan. 14, 2021) (finding a lay interpretation of data from non-DOT sources, such as the OOH, O*NET OnLine, and the ORS, "fails to undermine the reliability of the vocational expert's testimony") (citing, among others, *Selia R. v. Saul*, 2020 WL 3620228, at *14 (E.D. Wash. Apr. 27, 2020) ("[C]ourts in this circuit considering similar arguments have found that lay assessment of raw data does not rebut a vocational expert's opinion."); *David G. v. Saul*, 2020 WL 1184434, at *5 (C.D. Cal. Mar. 11, 2020) ("Plaintiff's subjective lay assessment of the data [from various non-DOT sources] is insufficient to undermine

---

[4] For the same reason, the Court rejects Plaintiff's argument that based on "the statistical evidence from the Department of Labor," the ALJ's use of "stand or walk" in the hypothetical posed to the VE was "awkward" and "ambiguous" and "l[ed] to the vocational expert testimony that is inconsistent with and contradicted by statistical data from the Department of Labor." (JS at 8-9.) Further, the "stand or walk" limitation is consistent with the ability to perform medium exertional work. *See* SSR 83-10 ("A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday . . ."). Moreover, there is no reason to believe the VE was confused by the hypothetical. *See James T. v. Saul*, 2019 WL 3017755, at *2 (C.D. Cal. July 10, 2019) ("Since [1983], ALJs and VEs with experience conducting social security disability benefits hearings have understood medium work as requiring the ability to stand or walk for up to 6 hours.").

the VE's analysis."), *aff'd* — F. App'x— (9th Cir. Feb. 22, 2021)).

In sum, Plaintiff's claim is forfeited, but even assuming it is not, it is meritless. The Court finds that the ALJ's step five finding is supported by substantial evidence.

### B. The ALJ Did Not Err in Determining Plaintiff's Mental RFC

Plaintiff contends that the ALJ did not properly consider his mental impairments in determining his RFC. (JS at 26-31.) Specifically, he argues that the ALJ should have adopted the opinions of treating source Dr. Kallis and examining source Dr. Taylor. (JS 31.) The Commissioner argues that the ALJ properly evaluated the evidence of record regarding Plaintiff's mental impairments and reasonably found that he could perform simple, repetitive tasks. (JS at 31.)

### 1. Applicable Legal Standards

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3); *see Robbins*, 466 F.3d at 883 (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 C.F.R. § 416.927.[5] An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians

---

[5] For all claims filed on or after March 27, 2017, 20 C.F.R. § 416.920c applies, not § 416.927. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c. The claim here, however, was filed before March 27, 2017. Thus, the Court analyzes Plaintiff's claim pursuant to the treating source rule set forth in § 416.927.

11

who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also* 20 C.F.R. § 416.927. Most often, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Generally, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison*, 759 F.3d at 1012.

The ALJ must provide "clear and convincing" reasons to reject a treating or examining physician's uncontradicted opinion. *Trevizo*, 871 F.3d at 675; *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted). Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," such an opinion may serve as substantial evidence when it is consistent with and supported by other independent evidence in the record. *Lester*, 81 F.3d at 830-31; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (finding ALJ properly relied on non-examining state agency physician's assessment in determining the claimant's

///

12

RFC and in rejecting the treating doctor's opinion regarding the claimant's functional limitations).

### 2. The ALJ's Decision

The ALJ determined that Plaintiff had the mental RFC to perform simple, repetitive tasks. (AR 20.)

In determining Plaintiff's mental RFC, the ALJ did "not give great weight" to Dr. Kallis's treating opinion that would preclude all work.[6] (AR 24, 482-83.) The ALJ stated that Dr. Kallis did not provide any objective medical findings to support her opinion and she "overstated" Plaintiff's limitations. (AR 24.) The ALJ found that Dr. Kallis opined that Plaintiff had marked limitation in maintaining concentration, yet evidence from Dr. Kallis's treatment notes showed that Plaintiff was able to consistently maintain concentration. (AR 24, 469, 473, 495, 497, 500, 502.) In addition, Dr. Kallis opined that Plaintiff would miss four days of work per month, but there was nothing in the record that suggested that Plaintiff had significant symptoms or side effects from his medications. (AR 24.)

The ALJ gave "partial weight" to the State Agency review doctors and the psychological consultative examiner, Dr. Taylor, all of whom limited Plaintiff's ability to interact with others.[7] (AR 24, 63, 80, 444-50.) The ALJ found this limitation not consistent with the record as a whole, which showed that Plaintiff was cooperative with consultative examiners and his treating doctors (AR 447, 473),

---

[6] The ALJ mistakenly refers to Dr. Kallis as "Dr. Kalls." (AR 24.)

[7] Dr. Taylor opined that Plaintiff had no limitation in his ability to follow detailed instructions; a moderate limitation in his ability to respond to work pressure in a usual work setting; and a marked limitation in his ability to interact with the public, coworkers, and supervisors due to depression and impaired social interaction. (AR 449.) The State Agency review psychiatrist opined that Plaintiff could perform simple tasks, interact with supervisors, coworkers, and the public in a service capacity, and could adjust to changes in routine in a "typical non-public unskilled setting." (AR 68-69.) On reconsideration, the State Agency review doctor agreed and stated that the evidence revealed a "mostly stable mood that would not preclude claimant from performing SRTs [simple, repetitive tasks]". (AR 82.)

attended weekly alcoholics anonymous meetings and admitted he had friends (AR 311, 434), and Dr. Kallis opined that Plaintiff had "none" to "mild" limitation in interacting with others (AR 482). (AR 24.)

### 3. Discussion

Plaintiff contends that the ALJ erred in not adopting Dr. Kallis's and Dr. Taylor's conclusion that in essence, he cannot sustain work.[8] (JS at 31.) After the Commissioner argued that Dr. Kallis's and Dr. Taylor's opinions directly contradict each other—as Dr. Kallis opined that Plaintiff had mild or no limitations in social interactions and marked limitations in remembering information and concentration, and Dr. Taylor opined that Plaintiff had marked limitations in interacting with others and no limitation in following detailed instructions—Plaintiff retreated from his contention that the ALJ erred by not adopting Dr. Kallis's and Dr. Taylor's opinions. In the Reply, Plaintiff focused on Dr. Kallis's opinion. He argued that the memory and concentration deficits that Dr. Kallis opined are consistent with Dr. Taylor's testing, and that accordingly, the Court should credit the opinion of Dr. Kallis and award benefits. (JS at 41-42.)

The ALJ discounted Dr. Kallis's opinion that Plaintiff had marked limitation in maintaining concentration and would miss four days of work per month because Dr. Kallis did not provide objective medical findings to support her opinion, and the medical record contradicted her opinion. (AR 24.) These are specific and legitimate reasons for the ALJ to discount Dr. Kallis's opinion. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) ("The ALJ, however, permissibly rejected [psychological evaluations] because they were check-off reports that did not contain any explanation

---

[8] The VE testified that a hypothetical person with Plaintiff's RFC who would miss approximately one day of work per week due to pain or psychological distractions would not be able to sustain employment. (AR 52.) The VE also testified that a hypothetical person with Plaintiff's RFC with some additional limitations, including occasional contact with coworkers and the general public, would not be able to sustain employment. (AR 51-52.)

14

of the bases of their conclusions."); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (an ALJ may disregard a treating physician's opinion that is brief, conclusory, and lacks clinical findings). Where a treating physician's opinion is in a check-box form that is supported by the physician's experience with the plaintiff and the medical record, however, it is "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison*, 759 F.3d at 1013; *see also Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) ("Although the treating physician's opinions were in the form of check-box questionnaires, that is not a proper basis for rejecting an opinion supported by treatment notes.").

Here, the ALJ's finding was supported by substantial evidence. Dr. Kallis's opinion was expressed in a two-page check-box/circle the answer Mental Impairment Questionnaire in which she did not provide objective medical findings to support her opinion. (AR 482-83.) Further, the record, including Dr. Kallis's treatment notes, contains evidence that Plaintiff was able to consistently maintain concentration. For example, Dr. Taylor found that Plaintiff was able to recall three objects immediately and zero objects after a short delay; he was able to repeat five digits forward and three digits backward; he was not able to perform serial sevens and stopped the serial threes; and he was able to spell the word "music" forward and backward. (AR 22-23, 447-48.) Based on Dr. Taylor's review of Plaintiff's psychiatric treatment notes through January 27, 2017 and the consultative evaluation, Dr. Taylor concluded that Plaintiff had no limitation in memory or concentration. (AR 449.) As the ALJ noted, Dr. Kallis's own treatment notes from 2017 indicate that Plaintiff's memory recall was intact; he was able to maintain concentration; he was alert and oriented in all spheres; and he denied hallucinations or delusions. (AR 23, 469, 473, 495, 497, 500, 502.) An ALJ may discount a treating physician's opinion when it contradicts her treatment notes. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Finally, the ALJ's finding that there is nothing in the record that suggests that Plaintiff's symptoms or medication side effects would cause him to miss more than

four days of work per month is a reasonable interpretation of the record as a whole. Although Plaintiff urges a different interpretation of the evidence, the Court cannot find that the ALJ's interpretation was unreasonable. As such, the Court must defer to the ALJ's decision. *See Ryan*, 528 F.3d at 1198 ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (citing *Burch*, 400 F.3d at 679).

To the extent Plaintiff still maintains that the ALJ erred by rejecting Dr. Taylor's marked limitations in interacting with others, this argument is rejected. The ALJ noted that Plaintiff was cooperative with Dr. Taylor and his treating doctors. (AR 24, 447, 473). In addition, Dr. Kallis opined in March 2018 that Plaintiff had "none" or only "mild" limitations in interacting with others and assessed in April 2017 that Plaintiff "seems to feel somewhat better when he gets work and when his social contacts increase." (AR 24, 463, 482.) Plaintiff also attended weekly, sometimes daily, Alcoholics Anonymous meetings;[9] reported spending time with friends; reported wanting to have a relationship with his children; and reported at his last appointment in February 2018 that he had a girlfriend.[10] (AR 24, 434, 463, 497, 500, 502, 506.) These are proper reasons for discounting an examining doctor's opinion. *See Shephard v. Berryhill*, 722 F. App'x 641, 643 (9th Cir. 2018) (holding ALJ properly discounted physician's opinion on claimant's social limitations because "it was inconsistent with [claimant's] activities, which included interacting

///

///

---

[9] Plaintiff incorrectly argues that the ALJ did not cite to any records of him attending AA meetings during the relevant period. Plaintiff cited to a treatment record from February 2017, which is within the relevant period. (AR 24, 434.) Further, Plaintiff does not deny that he was reportedly going to AA meetings every day as of February 2018. (AR 506.)

[10] Plaintiff's last psychiatric treatment was in February 2018, after which his case was closed in October 2018 because he had not contacted the clinic or followed-up with psychiatric treatment in eight months. (AR 23, 510, 512, 513.)

16

appropriately with friends and healthcare providers.") (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)).[11]

In sum, the Court finds that the ALJ properly considered the relevant medical evidence of record in assessing Plaintiff's mental RFC.

## V.   CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 1, 2021

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

---

[11] The Commissioner "notes that it is unclear whether Plaintiff was compliant with treatment at the time of his April 7, 2017 examination with Dr. Taylor, which could have affected Dr. Taylor's opinion," and further notes that Plaintiff had used drugs within four weeks of his appointment on April 27, 2017. (JS at 38.) The Court cannot rely on this *post hoc* rationalization because the ALJ did not rely on these reasons to discount Dr. Taylor's opinion. *See Garrison*, 759 F.3d at 1010 (district court's review is limited to only grounds relied upon by ALJ) (citing *Connett*, 340 F.3d at 874).